**2020 BNH 001**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:   Bk. No. 16-11173-BAH
         Chapter 7
Kevin W. Lally,
         Debtor

*Olga L. Gordon*
*Murtha Cullina LLP*
*Boston, MA*
*Chapter 7 Trustee and Attorney for Murtha Cullina LLP*

*Matthew J. Delude*
*Primmer Piper Eggleston & Cramer, PC*
*Manchester, NH*
*Attorney for Creditors Domenic L. Germano and Kristen Germano*

## MEMORANDUM OPINION

Olga L. Gordon, the trustee appointed in the above chapter 7 case (the "Trustee") seeks approval of her Amended Final Report and Request for Commission and Expenses (the "Final Report") (Doc. No. 163), and the Amended First and Final Application of Murtha Cullina LLP for fees and expenses incurred as counsel to the Trustee (the "Fee Application") (Doc. No. 152). Creditors Domenic L. Germano[1] and Kristen Germano[2] (collectively the "Germanos") filed

---

[1] Domenic Germano appears individually and as Trustee of the P&D Realty Trust.
[2] Kristen Germano appears in her capacity as the Personal Representative of the Estate of Joseph Germano Personally [sic] and as Trustee of the P&D Realty Trust. Pursuant to this court's July 20, 2018 order resolving the Trustee's objections to the Germanos' claims, Domenic Germano and Kristen Germano severally hold allowed unsecured claims in the amount of $457,255.41 (Doc. No. 149). Together, the Germanos hold approximately 98% of the allowed general unsecured claims against the estate.

objections to the Final Report and the Fee Application. With respect to the Final Report, the Germanos argue that: (a) the dollar amount of the commission exceeds the statutory cap imposed by 11 U.S.C. § 326[3] because the Trustee calculated the commission on an incorrect "base" and (b) to the extent that it was correctly calculated, the requested commission is unreasonable under the circumstances of this case. With respect to the Fee Application, the Germanos object to: (a) the hourly rate charged, (b) the failure to delegate routine tasks to paralegals or other assistants, and (c) billing for tasks that should have been performed by the Trustee. The Trustee filed responses to both objections. The United States Trustee filed a response to the Final Report supporting the award of the maximum statutory commission to the Trustee (as calculated by the Trustee) and taking no position on any other issues presented.

By way of background: Kevin Lally (the "Debtor") commenced this case as a voluntary chapter 11 case on August 18, 2016. Due to an unexpected change in employment status, the Debtor was no longer able to fund a chapter 11 plan. On June 23, 2017, the Debtor converted his case to a chapter 7, and the Trustee was appointed. On July 25, 2017, shortly after the conclusion of the § 341 meeting of creditors, the Trustee sought to retain Murtha Cullina LLP as general counsel to (according to the retention application) prepare necessary pleadings associated with the liquidation and recovery of estate assets, represent the Trustee in court proceedings, assist the Trustee in investigating fraudulent transfers and insider and non-insider preferences, and perform such other legal services as may be required in the interest of the Debtor's creditors. The Trustee is a partner at Murtha Cullina. The Court granted the application to employ without a hearing and without objection. The Trustee, with the assistance of Murtha Cullina, proceeded with the liquidation of the assets of the bankruptcy estate.

---

[3] All statutory references herein are to title 11, U.S.C.

The primary asset in the estate was a personal injury claim held by the Debtor arising from a pre-petition "life-altering" automobile accident. The Debtor's non-filing spouse, Sharon Lally, also held claims arising out of the same accident. Other than the personal injury claim, the scheduled non-exempt assets of the chapter 7 estate consisted of a portion of the cash surrender value of a life insurance policy, equity in a 1994 Jaguar XL, and a small preferential transfer claim. The value of those three non-exempt assets is $5,000.

On September 11, 2017, the Court granted the Trustee's motion to employ Kathleen S. DiFruscia of DiFruscia Law Offices as special counsel to represent the Trustee in connection with the personal injury case, *nunc pro tunc* April 11, 2016.[4] Ms. DiFruscia also represented Sharon Lally in connection with her personal injury claims. Ultimately, after mediation, the parties reached an agreement to settle all of the personal injury claims. On February 26, 2018, the Trustee filed a Motion to Approve General Release and Settlement Agreement (the "Settlement Motion"), and Ms. DiFruscia and the Trustee jointly filed an application to approve Ms. DiFruscia's fees for representing the estate in connection with the Debtor's personal injury claim.

In the Settlement Motion, the Trustee sought the Court's approval of a January 16, 2018 General Release and Settlement Agreement signed by the Debtor and Sharon Lally, which settled all of the Lallys' personal injury claims for $300,000.00. The Settlement Agreement was subject to bankruptcy court approval, and provided, in pertinent part:

> Releasors [the alleged tortfeasors and their insurers] affirm and acknowledge that Kevin Lally is presently in Chapter 7 bankruptcy. The Chapter 7 bankruptcy trustee assigned to the proceedings is Olga Gordon . . . . The Releasors agree to the following allocation of the settlement payment:

---

[4] During the chapter 11, the Debtor (as debtor in possession) had already retained Ms. DiFruscia to pursue the personal injury claims pursuant to an existing retention agreement dated April 11, 2016. The Trustee executed a similar but not identical retention agreement with Ms. DiFruscia on August 4, 2017 (Doc. No. 85).

3

   a. $101,038.61 in legal fees and expenses to Attorney Kathleen DiFruscia;

   b. $22,823.74 to satisfy outstanding medical liens; and

   c. $176,137.65 – with $58,712.55 to Sharon Lally for her loss of consortium claim, and the remaining balance of $117,425.10 to the Chapter 7 bankruptcy trustee of Kevin Lally's bankruptcy case.

The Germanos filed an objection to the Settlement Motion. They did not actually object to the amount of the settlement—just to its allocation as between the Debtor and his spouse. After a hearing, the Court overruled the Germanos' objection and granted the Settlement Motion and approved Ms. DiFruscia's fee application.

In her Final Report, the Trustee reports gross receipts of $305,000 ($300,000 for the personal injury action and $5,000 for the remaining assets). The Trustee seeks the maximum statutory commission of $18,500 on the $305,000 she collected and intends to disburse. Murtha Cullina seeks legal fees of $14,166.50, and expenses of $346.36.

### A. Request for Commission

The Bankruptcy Code authorizes the Court to award a chapter 7 trustee a reasonable compensation for actual, necessary services and reimbursement of actual and necessary expenses. § 330(a)(1). Historically, chapter 7 trustee compensation was determined by a lodestar analysis. Garb v. Marshall (In re Narragansett Clothing, Co), 210 B.R. 493 (1st Cir. B.A.P. 1997). [5] However, in 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BACPA") amended § 330 in a way that challenged the application of the lodestar analysis when determining reasonable compensation for a chapter 7 trustee.

---

[5] The lodestar is calculated by multiplying the number of hours reasonably incurred by the applicant at a reasonable hourly rate. Id.

4

Specifically, BACPA added § 330(a)(7), which states: "In determining the amount of reasonable compensation to be paid to a trustee, the court shall treat such compensation as a commission, based on § 326."[6]  Courts have found that this additional language, combined with the corresponding removal of chapter 7 trustees from the list of professionals identified in § 330(a)(3), implied a Congressional intent to remove chapter 7 trustee compensation from the traditional lodestar analysis, and convert it to a straight commission as set forth in § 326.  Matter of JFK Capital Holdings, L.L.C., 880 F.3d 747, 752 (5th Cir. 2018); Mohns, Inc. v. Lanser (In re Wilson), 522 B.R. 594, *aff'd sub nom* In re Wilson, 796 F.3d 818 (7th Cir. 2015); In re Rowe, 750 F.3d 392, 397 (4th Cir. 2014); Hopkins v. Asset Acceptance LLC (In re Salgado-Nava), 473 B.R. 911 (9th Cir. B.A.P. 2012).  "In removing Chapter 7 trustees from § 330(a)(3) and directing courts to treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on the basis of a percentage rather than on a factor-based assessment of the trustee's services of the lodestar method."  Mohns, Inc. v. Lanser, 522 B.R. at 599.  The Court agrees with this reasoning and holds that under § 330(a)(7), the graduated percentage commission of § 326 is a presumptively reasonable compensation for the Trustee.

Of course, a presumption is not a guarantee, and the Court retains the obligation and discretion to reduce the commission to less than the statutory maximum in extraordinary circumstances.  In re Rowe, 750 F.3d 392 (4th Cir. 2014).  Among the courts that agree regarding reduction of the commission based on "extraordinary circumstances," however, there

---

[6] Section 326(a) lays out a graduated compensation schedule for calculation of the chapter 7 trustee commission based on a percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." § 326(a). *See* footnote 6, *infra*.

5

is some disagreement on the interplay of lodestar factors when making that determination. *Compare* Matter of JFK Holdings, LLC, 880 F.3d. 747 (determination of whether extraordinary circumstances exist will be made on a case-by-case basis in the context of results achieved, in light of responsibilities undertaken in the case, rather than traditional lodestar factors), *with* In re Salgado-Nava, 473 B.R. at 921 ("When confronted with extraordinary circumstances, the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis.").

The Germanos argue that the circumstances in this case are extraordinary because the personal injury claim was settled largely—if not entirely—through the efforts of the Trustee's special counsel, and that the settlement proceeds should not be viewed as the fruits of the Trustee's efforts, particularly because special counsel is receiving legal fees for her services in accordance with the contingent fee agreement approved by this Court.

In his statement in support of the requested commission, the U.S. Trustee cites several reasons why he supports the full commission in this case. (Doc. No. 160). One reason is that the statutory compensation scheme of § 326(a) is universally applicable in all cases, including difficult cases in which trustees may be required to engage in labor-intensive administration of illiquid assets and, despite their best efforts, may simply come up empty handed, with no money to pay administrative expenses, let alone fund a distribution to creditors. In such cases, a trustee would receive a $60 fee, which (as he puts it) has lamentably not increased since 1994. The U.S. Trustee states that permitting the full commission in all cases helps attract and incentivize quality candidates to serve a highly important role in the bankruptcy system. The U.S. Trustee further acknowledges that the "not to exceed" language of § 326(a) permits downward departure from the statutory maximums, but suggests that the extraordinary factors justifying such downward

departure arise only in "rare and unusual circumstances," such as substandard administration by a trustee, or excessive delegation of the trustee's duties.

The Germanos urge that this case is "rare and unusual" because virtually all of the funds available for distribution are the proceeds of a personal injury claim that was litigated and settled by special counsel, and not by the Trustee. The problem with this argument is that it is not at all rare or unusual that claims held by a bankruptcy trustee—be they personal injury claims, avoidance claims, or other types of claims—would generally be litigated or settled by counsel to a trustee, and not by the trustee herself. Those are not "rare and unusual" cases. Were the court to adopt a view that litigation proceeds resulting from legal services rendered to a trustee by retained counsel should not be included in the commission because those services will be separately compensated by an award of attorney's fees to the retained counsel, it would undermine the presumption of reasonableness that § 326 affords. For that reason, the Court finds that this case is not so "rare and unusual" as to require a reduction in the statutory formula for the commission, and that the statutory maximum is appropriate.

### B. Chapter 7 Trustee Commission Base

The second question before the Court is the dollar amount upon which to base the Trustee's commission. Section 326(a) states "the court may allow reasonable compensation [expressed in percentages]. . . upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor but including holders of secured claims."[7] The

---

[7] Section 326(a) provides:
   In a case under chapter 7 or 11, the court may allow reasonable compensation under § 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor but including holders of secured claims.

Trustee seeks compensation of $18,500, which represents the statutory maximum percentage commission on a base of $305,000.

According to the Trustee's Final Report, the entire $300,000 settlement was paid to the Trustee on February 26, 2018.  On March 22, 2018, the Trustee disbursed $101,038.61 to DiFruscia Law Offices for special counsel fees and expenses, $22,823.74 to The Phia Group for medical liens, and $58,712.55 to Sharon Lally for "Payment Pursuant to Court Order #124 – loss of consortium."   In calculating her commission, the Trustee included the entire $300,000 in the commission base, including the three disbursements set forth above.

The Germanos object to the inclusion of the three disbursements in the commission base when calculating the Trustee's commission.  Section 326(a) provides the chapter 7 trustee shall be awarded compensation "upon all moneys disbursed or turned over in the case by the trustee *to parties in interest*, excluding the debtor but including holders of secured claims." (Emphasis provided).  The Germanos argue that retained professionals, including the Trustee's general and special counsel, are not "parties in interest," and that payments to those professionals should therefore be excluded from the commission base.  In support of their argument, the Germanos cite a series of cases spawned by a 2004 federal district court decision from the Eastern District of New York finding that professionals retained by the bankruptcy trustee were not "parties in interest," and that therefore payments to the trustee's retained professionals should not be included when calculating the chapter 7 trustee's commission base.  In re Testaverde, 317 B.R. 51, 53 (E.D.N.Y. 2004) ("[T]he trustee may not include within the base of distributions any fees and costs paid to his accountants, special counsel, or his own general counsel").

Testaverde began its analysis by looking at the Black's Law Dictionary definition of a "party in interest" as one who has a pecuniary interest that is directly affected by the bankruptcy

proceeding. Id. at 54.  Since the trustee's retained professionals must be "disinterested" in the estate, the Court reasoned those same professionals cannot be parties in interest. "Rather, trustee's counsel is an entity hired to assist the trustee, who is the administrator of the debtor's estate.  Thus, the plain language of § 326 does not include money given to trustee's counsel.  It follows that the money paid to trustee's counsel should not be included in the base for trustee's compensation." Id.

     A few bankruptcy courts followed Testaverde, either due to its reasoning or in deference to their local district court's authority.  See In re All Island Truck Leasing Corp, 546 B.R. 522, 534 (Bankr. E.D.N.Y. 2016) ("In calculating disbursements for § 326(a) purposes, payments made to retained professionals as administrative fees may not be included, as retained professionals are not properly parties in interest.") (internal quotations omitted); In re McBrearty, 335 B.R. 513 (Bankr. E.D.N.Y. 2005) (court is bound by district court holding that the trustee may not include within the base, any fees and costs paid to legal professionals, including accountants, special counsel, or general counsel).  The Court disagrees with the narrow definition of "party in interest" relied upon by this line of cases.

     Despite its frequent appearance in the Bankruptcy Code and Bankruptcy Rules, the term "party in interest" is not defined by the statute.  Courts have recognized that the Congressional intent reflected in the legislative history indicates that they should define the term "after giving due consideration to the particular context in which the term will be applied."  In re Citi-Toledo Partners II, 254 B.R. 155, 163 (Bankr. N.D. Ohio 2000) ("[A] 'party in interest' has been held to encompass any party who has an actual pecuniary interest in the case, as well as to those parties who have a practical stake in the outcome of the case, or to those parties who will be impacted in any significant way by a decision made in the case");  In re Public Service Co. of New

Hampshire, 88 B.R. 546, 551 (Bankr. D. N.H. 1988) (concept of a party in interest in a chapter 11 case is "an elastic and broad one designed to give the Court great latitude to ensure fair representation of all constituencies impacted in any significant way").

Courts taking a more expansive view of "party in interest" have found, in the context of § 326(a), that the term should "include an entity to whom distribution of estate assets is legitimately made in furtherance of the overall distribution process contemplated in bankruptcy." In re Citi-Toledo Partners, II, 254 B.R. at 163 (citing In re North American Oil & Gas, Inc., 130 B.R. 473, 479 (Bankr. W.D. Tex. 1990)); In re Mohsen, 506 B.R. 96 (N.D. Cal. 2013); In re Nardelli, 327 B.R. 488 (Bankr. M.D. Fl. 2005).  Other courts have defined a "party in interest" as an entity that holds a claim against the bankruptcy estate or who is entitled to an administrative expense in the estate.  In re Market Resources Development Corp., 320 B.R. 841, 847 (Bankr. E.D. Va. 2004).  Under either of these definitions, the Trustee's retained professionals qualify as a "parties in interest" under § 326(a).  This Court believes that the more expansive view should govern the inquiry in this case, and that the professionals should properly be considered parties in interest.  For this reason, the Trustee may include payments to retained professionals in the base for calculating her commission under § 326(a).

The Germanos next object to including in the commission base the Trustee's payments to The Phia Group on its medical lien claims.  However, under the plain language of § 326(a), the Trustee may receive a commission on payments to holders of claims secured by a lien on property of the estate.  The Trustee's payments on The Phia Group's medical lien claims meet that description precisely.  The Germanos do not advance an argument to support excluding those proceeds from the commission base, nor is the Court aware of any legal basis to deviate from the language of the statute with respect to those proceeds.

Finally, the Germanos object to including in the commission base the settlement proceeds paid to Ms. Lally with respect of her loss of consortium claim.  In this case, by agreement of the parties, a specific portion of the settlement was allocated to Ms. Lally's claim.  No one has asserted that Ms. Lally's claim was owned or held by anyone but her.

The commission base should not include "property (or monies attributable to such property) returned to a third party after a determination (whether by agreement of the parties or by court order) (a) that the property in question came into the hands of the estate by means of fraud or illegality, or (b) that the property is not property of the estate and should be returned to its rightful owner." In re North American Oil & Gas, Inc., 130 B.R. at 478.  In determining whether the commission base should include funds distributed to third parties, the key question is "whether the property has been justifiably administered during the bankruptcy and whether the trustee has properly performed services in relation to that property." In re Invent Resources, Inc., 518 B.R. 169, 176 (D. Mass. 2014) (internal citation omitted).  Money that is not property of the estate must be returned to its rightful owner and should not be included in the compensation base.  In re Market Resources, 320 B.R. at 849 ("The trustee is no more entitled to include the funds as part of the base for purposes of calculation than if he had found the money on the street, picked it up and returned it to its owner.").

The money paid to Ms. Lally from the settlement is clearly not property of the bankruptcy estate, nor is Ms. Lally a party in interest in the Debtor's bankruptcy estate.  The fact that Ms. Lally's settlement proceeds passed through the Trustee's hands is not enough to change that conclusion. The Trustee must exclude payments to Ms. Lally in the base for calculating the chapter 7 trustee's commission under § 326(a).  Excluding the $58,712.55 disbursed to Ms. Lally from the $305,000 disbursed by the Trustee would yield a commission base of $246,287.45.

The inquiry does not end there, however. Since the portion of the settlement attributed to Ms. Lally's individual claim is excluded from the commission base, so should the legal fees paid to Ms. DeFruscia attributable to Ms. Lally's claim.[8] The Settlement Agreement specifically allocated the $176,137.65 net settlement proceeds (after attorney's fees and medical lien claims) between the Debtor and Ms. Lally as follows: $58,712.55 to Ms. Lally, and $117,425.10 to the Debtor—a one-third/two-thirds split. In the absence of any evidence to the contrary, the Court applies the same allocation to the $101,038.61 disbursed to special counsel, which consists of $100,000 in fees, and $1,038.61 in expenses (*see* fee application at Doc. No. 112). Accordingly, of the $101,038.61 in fees and expenses paid to special counsel, one-third of that amount—i.e. $33,679.54—should be excluded from the Trustee's commission base, yielding a net base of $212,607.91. Applying the statutory formula in § 326(a) to that amount yields an allowable commission of $13,880.40.[9]

### C. Reasonableness of Trustee's Counsel Fees

The last matter before the Court is the reasonableness of the legal fees for the Trustee's counsel, Murtha Cullina. As noted above, the Trustee is a partner in the firm. Murtha Cullina seeks reimbursement of legal fees of $14,166.50 for 36.7 hours for legal work as counsel to the Trustee. Of this total, 34.7 hours were billed by the Trustee herself as counsel to the Trustee at

---

[8] The Germanos did not make this precise argument, but since they objected to the inclusion of any amount of the professional fees in the Trustee's commission, the Court believes it is fair to consider it as implicit in their objections.

[9] Total Base: $212,607.91
    25% of $5,000 = $1,250
    10% of $45,000 = $4,500
    5% of $162,607.91 = $8,130.40
    Total commission = $13,880.40

the rate of $395 per hour, and two hours were billed by Jennifer A. Babula, a paralegal, at $230 per hour.

The Germanos raise several objections to the firm's Fee Application. One group of objections essentially treats the Trustee's requested commission and the firm's requested fees as a single fee. The Germanos argue that if the total commission requested by the Trustee ($18,500) is viewed in conjunction with (read "in addition to") the total fees requested by the firm ($14,166.50), and is then divided by the total hours spent on the case (36.7), the result is a "blended" and unreasonable hourly rate of $890. Conversely, the Germanos argue that if the requested fees and the requested commission are all viewed as a commission, then an award of the amount of the commission requested ($18,500) plus the total fees requested ($14,166.50) would result in a combined award that far exceeds the statutory commission cap provided in § 326(a).

The Court finds these objections unavailing. Notwithstanding the dual role the Trustee performed in this case, the Court declines the invitation to combine the analysis of her commission with the review of fees of her counsel. A chapter 7 trustee often will act as his or her own counsel in a chapter 7 case. This common and widely accepted practice is expressly permitted by the Bankruptcy Code, so long as it is in the best interest of the estate. 11 U.S.C. § 327(d). Allowing the chapter 7 trustee to serve as trustee's counsel benefits the bankruptcy estate when it results in more efficient administration and reduced costs. In re Whitney, 27 B.R. 352 (Bankr. D. Me. 1983). The Germanos do not claim that the Trustee's retention of her own firm was inefficient, or that it resulted in increased costs to the estate. They essentially argue that the Trustee receiving a commission and her firm receiving compensation for legal services rendered to the Trustee is "double dipping" by the Trustee and her firm. But the award of a

chapter 7 trustee commission is a separate and distinct analysis from the Court's award of compensation to the trustee's counsel. The Court specifically rejects any argument that combines the analysis. However, having said that, and as further discussed below, it is also true that an attorney for a chapter 7 trustee is not entitled to professional compensation for performing non-delegable duties of the trustee.

The Germanos also object to the hourly rate for attorney work charged by the firm, arguing that $395 per hour is not a reasonable hourly rate for attorney's fees based on community standards. The Germanos' specific focus on the hourly rate charged by the firm misses the point. Using the lodestar method, the Court determines a reasonable fee by reviewing the reasonableness of both the hourly rate charged and the number of hours billed. When determining the lodestar, the hourly rate charged is simply the beginning of the analysis. Hourly rates for attorneys can and likely do vary widely particularly in a community like New Hampshire, which represents a blend of both rural and urban constituents. However, in the Court's view, a rate of $395 per hour is within the range of rates charged by attorneys in similarly situated firms for comparable services. In addition, a higher hourly rate may generally imply that the attorney possesses both the necessary experience and competence to handle more complex matters, as well as the ability to perform their duties in fewer hours than less experienced attorneys who may bill at a lower rate. In re Public Service Co. of New Hampshire, 86 B.R. 7, 11 (Bankr. D.N.H. 1988). In other words, a higher hourly rate may not necessarily result in a higher overall fee. At the same time, the Court does review the application to determine if some of the work performed by an attorney could have been delegated to support staff or otherwise billed at a lower rate. However, in the end, "[t]he ultimate standard always is whether the final fee award is in fact an award of a 'reasonable fee' in the circumstances of the

14

particular case, i.e., reasonable hourly rates applied to reasonable hours expended in rendering necessary services as further adjusted upward or downward by various recognized factors." In re Public Service, Co., 86 B.R. at 11. The purpose of the lodestar method is to "provide a 'flexible paradigm' not meant to bind the nisi prius court to any single way of calculating the number of hours reasonably expended." In re Sullivan, 674 F.3d 65, 69 (1st Cir. 2012) (*quoting* United States v. Metro. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988)).

In addition, when reviewing the fee application of counsel for a chapter 7 trustee, the Court will take particular care to ensure that counsel does not seek reimbursement for non-delegable tasks of the chapter 7 trustee. In no circumstance may the trustee's counsel be compensated for duties specifically assigned to the trustee. To aid the Court in its review, the application for compensation must contain enough detail to meet the burden of demonstrating that legal fees sought are not for duties generally performed without the assistance of counsel.[10]

Section 704 of the Bankruptcy Code enumerates specific duties assigned to the chapter 7 trustee. Non-legal services are clearly not an appropriate delegation of responsibility to trustee's counsel. Only tasks that require professional skill and expertise beyond the ordinary knowledge and skill of the trustee may be delegated. In re King, 88 B.R. 768, 770 (Bankr. E.D.Va. 1988); In re Shades of Beauty, 56 B.R. 946, 949 (Bankr. E.D.N.Y. 1986) ("The function of an attorney for the trustee is to render to the estate those services which cannot and should not properly be performed by one who does not have a license to practice law."). The more difficult question surrounds the "nebulous gray area" of services "legal in nature but so closely related to the

---

[10] To this end, it was helpful to the Court that the Trustee submitted her detailed itemization of services rendered as Trustee, as well as her itemization of legal services rendered as counsel for the trustee for which no compensation was sought. (Doc. No. 168).

trustee's duties under § 704(a) that they arguably should not be compensated." In re King, 546 B.R. 682, 695 (Bankr. S.D. Tx. 2016).

In this case, the Germanos object to time spent by the firm on activities which, in their view, should have been performed by the Trustee in her capacity as trustee. Specifically, the Germanos objected to 13.6 hours of time billed by the firm for performing what they identify as non-delegable chapter 7 trustee responsibilities. In response, the Trustee refers the Court to her detailed billing statement, and her certified statement that "no compensation was sought for services as an attorney which are properly trustee services." At the hearing on the objection, she further identified attorney-to-attorney communications as always being billed as "trustee counsel" work.

The Court rejects the Trustee's proposed bright line demarcation that all communications with lawyers are de facto legal services that always will be justifiably delegated by the Trustee. One of a chapter 7 trustee's duties is to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a). Although communication with lawyers may sometimes be appropriately delegated to the Trustee's attorney, it clearly is not appropriate in all circumstances. For instance, correspondence with Debtor's counsel regarding the logistics of the bankruptcy case may not be a service that a lawyer, rather than the Trustee herself, should perform. For the most part, the Court is persuaded by other courts' analysis that general communications with a trustee and other parties in interest are at least presumptively non-delegable activities for a chapter 7 trustee, absent a showing to the contrary.

It is the applicant who bears the burden to demonstrate entitlement to requested fees. Matter of Evangeline Ref. Co., 890 F.2d 1312, 1326 (5th Cir. 1989). Overall, the Court finds the firm has failed to meet its burden justifying the reasonableness of the requested fees as a

whole, particularly when reviewing the types of tasks delegated by the Trustee.  The Court finds a reduction in the lodestar is justified.  When applying a lodestar analysis, "the court need not follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount."  In re Little, 484 B.R. 506 (1st B.A.P. 2013).   In light of the foregoing considerations, the Court will reduce the requested attorney's fees by $5,000.   The firm is awarded fees in the amount of $9,166.50.

This opinion constitutes the Court's finding of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue separate orders consistent with this opinion.

ENTERED at Concord, New Hampshire.

Date: February 28, 2020

/s/ Bruce A. Harwood
Bruce A. Harwood
Chief Bankruptcy Judge